IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| DORIS JERUS CHAISSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 6:19-cv-03189-SRB |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## **SEALED ORDER**

Before the Court is United States' Motion to Dismiss Plaintiff's Complaint. (Doc. #19). The motion is denied.

**I.     Background**

Plaintiff's Complaint challenges the United States Citizenship and Immigration Services' ("USCIS") denial of her naturalization application and asks the Court to restore her permanent residency status and grant her naturalization. Defendant United States of America now moves the Court to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Plaintiff argues the Court has subject-matter jurisdiction pursuant to 8 U.S.C. § 1421(c) and argues she states a claim for the relief she seeks.

Plaintiff was born September 5, 1959, in the Marshall Islands. Plaintiff married Norried Francis Chaisson, Jr., a United States citizen, on July 13, 1979. Plaintiff received legal permanent resident status ("LPR) on February 28, 1980. Plaintiff and her husband worked as missionaries traveling in and out of the United States on numerous occasions. On December 29, 2014, Plaintiff was departing Honolulu International Airport on her way back to the mission field

after attending an employer-mandated retreat in Honolulu. At 3:30 a.m., Plaintiff was stopped by an Immigration Officer who told Plaintiff she had three options: 1) pay a $585.00 fine, 2) wait in Honolulu to see a Judge; or 3) sign a Form I-407, which is an abandonment of LPR status. Plaintiff states she was "tired, without cash and/or credit cards, confused, and without knowledge as to the consequences of her choices." (Doc. #1, ¶ 9). Plaintiff also states she signed the Form I-407 "not understanding the document's meaning and the consequences of losing her permanent residency status." (Doc. #1, ¶ 10). On the Form I-407 that she signed, Plaintiff stated she was abandoning her status as a lawful permanent resident because "I will not be living in the U.S.A. until 2016." (Doc. #22-4).

Sometime later Plaintiff went to the U.S. Embassy in Majuro, Marshall Islands and requested her LPR card be returned to her. Embassy officials communicated with Honolulu immigration officials "who admitted that the Officers in Honolulu had made a mistake in improperly confiscating [Plaintiff's] permanent resident status (LPR card), as she was a missionary working with her husband, as an ordained minister, as missionary's (sic) on behalf of the General Council of the Assembly of God." (Doc. #1, ¶ 12). Honolulu officials said "they were going to do what they could to assist her." (Doc. #1, ¶ 13).

Sometime later Plaintiff returned to her permanent domicile in Springfield, Missouri and applied for naturalization. On February 10, 2017, USCIS denied Plaintiff's application for naturalization finding she did not meet the requirement of being a lawful permanent resident for five years at the time she applied for naturalization. USCIS found that on December 29, 2014, Plaintiff "abandoned [her] permanent resident status through a validly executed Form I-407[.]" (Doc. # 1-1, p. 2). Plaintiff then requested a hearing on USCIS's decision. After a hearing,

USCIS affirmed the denial of Plaintiff's naturalization application on May 25, 2017. The USCIS's denial letter concluded:

> [Y]ou indicated that you were given the option of going before an Immigration Judge at the time you signed the Form I-407 (which would have required you to remain in the United States until doing so). You chose not to stay in the United States and go before an immigration judge, and voluntarily signed the Form I-407. As stated earlier, only an immigration judge has the legal authority to return lawful permanent resident status to an alien who has abandoned their permanent resident status by completing Form I-407.

(Doc. #1-1, p. 2).

## II. Legal Standard

"In order to properly dismiss [an action] for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted). "In a facial attack, the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (internal quotation marks and citation omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (internal quotation marks and citation omitted). Given that Defendant does not challenge the accuracy of the allegations in Plaintiff's Complaint, the Court considers Defendant's argument that subject-matter jurisdiction is lacking to be a facial attack.

Pursuant to Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss [for failure to state a claim], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and

quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ash v. Anderson Merchs., LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (internal citation and quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678). The Court must accept all facts alleged in the complaint as true when deciding a motion to dismiss. *See Data Mfg., Inc. v. United Parcel Serv., Inc.*, 557 F.3d 849, 851 (8th Cir. 2009) (noting "[t]he factual allegations of a complaint are assumed true and construed in favor of the plaintiff, even if it strikes a savvy judge that actual proof of those facts is improbable").

### III. Discussion

#### a. Subject Matter Jurisdiction

Pursuant to 8 U.S.C. § 1421(a), "The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." Judicial review is provided for, however, in § 1421(c):

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall at the request of the petitioner, conduct a hearing de novo on the application.

"Any relief provided to the petitioner under § 1421(c) is an instruction to the agency to naturalize the petitioner." *Miller v. McAleenan*, No. 4:19-cv-00043-DGK, 2019 WL 2411440, at *2 (W.D. Mo. June 7, 2019) (citing *Zayed v. United States*, 368 F.3d 902, 906 (6th Cir. 2004)).

"A district court that is exercising its § 1421(c) jurisdiction can review only those decisions that § 1429 permits the Attorney General to make, of course." *Zayed*, 368 F.3d at 906

4

(citation omitted). Pursuant to 8 U.S.C. § 1429, "Except as otherwise provided in this subchapter, no person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter." The phrase "lawfully admitted for permanent residence" is defined in 8 U.S.C. § 1101(a)(2) as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."

Defendant argues that Plaintiff abandoned her LPR status, and she is ineligible for naturalization. Defendant concludes, "This Court does not have the legal authority to grant her the citizenship she seeks because to do so would be contrary to the authority given to the Attorney General." (Doc. #19, pp. 7-8). The Court finds this argument does not bear upon the Court's subject-matter jurisdiction to hear the case but rather upon the merits of Plaintiff's claim. *See Shyiak v. Bureau of Citizenship and Immigration Svcs.*, 579 F.Supp.2d 900, 904 (W.D. Mich. 2008) (finding the court had subject matter jurisdiction under § 1421(c) to review the denial of plaintiff's naturalization application, which was based on a finding plaintiff had abandoned LPR status). Section 1421(c) confers jurisdiction on this Court to consider Plaintiff's claim, and Defendant's motion based on Rule 12(b)(1) is denied.

      **b.**    **Failure to State a Claim**

Defendant argues in its reply in support of its motion to dismiss, "[Plaintiff's] ineligibility for naturalization has been undeniably resolved by the undisputed fact that [Plaintiff] abandoned her lawful permanent resident (LPR) status by executing Form I-407 . . . in the Honolulu International Airport." (Doc. #23, p. 2). Defendant further argues, "In this apparent attempt to rectify the substantive deficiencies of her pleading, [Plaintiff] has asserted for the first time in her

Opposition that her claim is really based on principles of tort law rather than de novo review of a statute as pled in her Complaint, *i.e.*, improper confiscation, destruction, and forced action." (Doc. #23, p. 3). The Court disagrees. Plaintiff's Complaint asks the Court for an order restoring her permanent resident status in addition to asking the Court for an order directing the Attorney General to naturalize her. (Doc. #1, p. 2). Plaintiff's Complaint alleges, "Officer Mullen continued to inform [Plaintiff] that she had to make a decision [by either paying a fine, staying in Honolulu to see a judge, or signing a Form I-407] without explaining any of the long-term consequences of the choices." (Doc. #1, ¶ 8). Plaintiff's Complaint further alleges that immigration officials later admitted Plaintiff's LPR card was improperly confiscated. (Doc. #1, ¶ 12). The Court finds the issues of "improper confiscation, destruction, and forced action" were all pled in the Complaint.

Accepting all allegations in the Complaint as true, the Court finds Plaintiff's Complaint states a claim upon which relief might be granted. In *Shyiak*, the court denied plaintiff's request for review of USCIS's naturalization denial based on USCIS's determination that plaintiff had abandoned his LPR status, but the court did so on a motion for summary judgment, not on a motion to dismiss. 579 F.Supp.2d at 904. A similar result occurred in one of the primary cases relied upon by Defendant, *Casetllani v. U.S. Immigration and Naturalization Svc.*, Civ. A. No. 89-3515, 1990 WL 171516, at *2 (E.D. Pa. Nov. 1, 1990). Defendant argues that *Castellani* holds "an alien abandons his or her LPR status by signing a form I-407." (Doc. #23, p. 5). While the *Castellani* court held that the plaintiff had abandoned his LPR status by signing a Form I-407, the court did so in ruling on a motion for summary judgment after finding no evidence in the record of affirmative misconduct by the government. 1990 WL 171516, at *2. Defendant asks this Court to find that it is an "undisputed fact that [Plaintiff] abandoned her

lawful permanent resident (LPR) status by executing Form I-407[.]" (Doc. #23, p. 2). Given the allegations in the Complaint, however, and the requirement that the Court accept them as true at this early stage in the case, such a finding is precluded on a motion to dismiss.

## IV. Conclusion

Accordingly, the United States' Motion to Dismiss Plaintiff's Complaint (Doc. #19) is denied.

**IT IS SO ORDERED.**

<u>/s/ Stephen R. Bough</u>
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: <u>April 10, 2020</u>